# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAULA L. BICKEL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-98 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., Chief Judge.

### I.   INTRODUCTION

Paula L. Bickel ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*.  Plaintiff filed her application on May 18, 2009, alleging disability since May 13, 2009 due to diabetes, depression and "poor reading comprehension" [1] (AR 88-95; 120).[2]  Her application was denied (AR 49-54), and following a hearing held on June 17, 2010 (AR 22-46), the administrative law judge ("ALJ") issued his decision denying benefits on July 14, 2010 (AR 11-18).  Plaintiff's request for review by the Appeals Council was denied (AR 1-6), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision, and presently pending

---

[1] Plaintiff challenges the ALJ's decision with respect to her mental impairments only.  *See* [ECF No. 9] p. 5.  We therefore confine our discussion accordingly.
[2] References to the administrative record [ECF No. 6], will be designated by the citation "(AR ___)".

1

before the Court are the parties' cross-motions for summary judgment. For the following reasons, both motions will be denied and the matter will be remanded to the Commissioner for further proceedings.

## II. BACKGROUND

Plaintiff was 46 years old on the date of the ALJ's decision and has a high school education (AR 17; 125).

She had no past work experience that rose to the level of substantial gainful activity during the relevant time period (AR 17).

On April 23, 2009, Plaintiff was prescribed Prozac by her primary care physician at Conneaut Valley Health Center (AR 225). When seen on July 10, 2009, Plaintiff reported that her depression was "variable" (AR 223). It was noted that her affect appeared somewhat blunted, and her Prozac dosage was increased (AR 223).

On July 24, 2009, Plaintiff underwent a consultative examination performed by Curtis Helgert, D.O. to address her physical impairments (AR 163-168). Dr. Helgert reported that he had known the Plaintiff for a number of years, and she had a longstanding history of depression due to situational difficulties in her domestic life (AR 163; 166). He reported that her social situation was "generally poor" with an extended family of limited skills, limited education, and a heavy dependence on social services (AR 164). Dr. Helgert found that the Plaintiff's physical impairments were not disabling, but was of the view that her disability would be "driven" by her socioeconomic problems, functional illiteracy and depression (AR 166).

On July 29, 2009, Michael Mercatoris, Ph.D., performed a psychological evaluation of the Plaintiff (AR 173-181). Plaintiff reported that she lived with her husband and adult son (AR 174). She reported suffering from depression for the past two years, but denied any treatment (AR 173-174). Plaintiff further reported that she had nightmares and flashbacks related to childhood sexual abuse (AR 174). On mental status examination, Plaintiff described her mood as "a little nervous" (AR 175). Dr. Mercatoris found her affective expression was "mildly

2

anxious" and appropriate to her stated mood (AR 175). Plaintiff reported that she cried daily, had feelings of guilt, slept "all the time" during the day, suffered from insomnia at night, and had suicidal thoughts (AR 175). She denied any symptoms of anxiety or panic disorders (AR 175). Dr. Mercatoris found that Plaintiff had no unusual characteristics of speech, and her thoughts were fluent and goal-directed (AR 175-176). Plaintiff denied any obsessive thinking or behavioral compulsions, and denied having suicidal thoughts on the day of the evaluation (AR 176). Dr. Mercatoris reported that Plaintiff could perform single digit subtraction and count backwards by 2's without error, but had difficulty performing serial 3 subtraction (AR 176-177). Her memory was intact, but she had difficulty on immediate retention and recall testing (AR 177). He reported that her social judgment was "variable" and influenced by her depression (AR 178). Dr. Mercatoris found that Plaintiff showed characteristics of major depression, recurrent, as well as post-traumatic stress disorder (AR 178).

With respect to her activities of daily living, Plaintiff reported that her husband cooked and paid the bills (AR 178). Socially, Plaintiff reported that she did not like talking to her husband and did not get along with her family (AR 178). Plaintiff indicated that she was able to get along with her boss, but not her coworkers or the general public (AR 179). Dr. Mercatoris found that the Plaintiff was able to communicate clearly and that her social maturity was commensurate with her age (AR 179). As for the Plaintiff's concentration, task persistence, and ability to adapt, Dr. Mercatoris found that she "should be able to carry [out] simple instruction[s]" and "adapt to simple changes" in a work-like situation (AR 179). He noted that she "might" be slow to perform activities on a schedule or react to deadlines (AR 179). Dr. Mercatoris indicated that Plaintiff "might not be able" to maintain regular attendance due to her depression (AR 179). He noted that she reportedly "just [went] to bed and [forgot] about the world" when under a lot of stress (AR 179).

Dr. Mercatoris completed a questionnaire with respect to Plaintiff's ability to perform work-related mental activities (AR 180-181). He found that she had slight limitations in

3

understanding, remembering, and carrying out short, simple instructions (AR 180). He further found that she had only moderate limitations in understanding, remembering and carrying out detailed instructions, and making judgments on simple work-related decisions (AR 180). Finally, Dr. Mercatoris concluded that Plaintiff would have only moderate limitations in interacting appropriately with the public, supervisors and co-workers, and in responding appropriately to work pressures and changes in a usual work setting (AR 180).

On August 17, 2009, Arlene Rattan, Ph.D., a state agency reviewing psychologist, reviewed the psychiatric evidence of record and determined that Plaintiff had mild limitations in completing activities of daily living, moderate difficulties in maintaining concentration, persistence and pace, and moderate difficulties in maintaining social functioning (AR 199). Dr. Rattan completed a Mental Residual Functional Capacity Assessment form, and opined that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine; make simple work-related decisions; ask simple questions; and maintain socially appropriate behavior (AR 203-204). She found Plaintiff was markedly limited, however, in her ability to understand, remember, and carry out detailed instructions (AR 203). She concluded that the Plaintiff was only moderately limited in all other work-related areas (AR 203-204).

Dr. Rattan found that while the Plaintiff's ability to understand and remember complex or detailed instructions was limited, she would be expected to understand and remember simple one- and two-step instructions (AR 205). She opined that Plaintiff could perform simple, routine, repetitive work in a stable environment (AR 205). She found Plaintiff was able to ask simple questions, accept instructions, and sustain an ordinary routine without special supervision (AR 205). Finally, Dr. Rattan concluded that Plaintiff remained capable of meeting the basic mental demands of competitive work on a sustained basis (AR 205).

4

On September 25, 2009, Plaintiff began treatment at Stairways Behavioral Health for her complaints of depression and was seen by Rebecca Grove, MSW (AR 237-239). Plaintiff reported that she lived with her husband and mentally disabled son (AR 237). She reported a history of childhood sexual abuse and claimed that she had suicidal thoughts on a monthly basis (AR 237). She claimed that she had vivid dreams of death, trouble concentrating, and slept excessively (AR 237). Plaintiff reported that she played bingo or went to the casino when a friend gave her money (AR 238). Ms. Grove noted that Plaintiff lacked coping strategies and had poor insight (AR 237). She diagnosed Plaintiff with an unspecified episodic mood disorder and assigned her a global assessment of functioning ("GAF") score of 55 (AR 239).[3] A treatment plan was formulated and Plaintiff was to undergo a psychiatric evaluation, medication management, and individual therapy (AR 239). Treatment goals were listed as "better sleep", engaging in more activities, and reducing thoughts of death (AR 240).

On October 6, 2009, a psychiatric evaluation was performed by Sean Su, M.D. (AR 241-242). Plaintiff reported that she lived with her husband and her adult disabled son, and that both required constant supervision and care (AR 241). She complained that her depression had increased in severity over the past year (AR 241). Plaintiff stated that she suffered from various problems, including mood, appetite and sleep disturbances, difficulty concentrating, increased anxiety, poor energy levels, and feelings of hopelessness, helplessness and worthlessness (AR 241). She reported a lifelong history of nightmares associated with past childhood abuse (AR

---

[3] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 51 to 60 may have "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (e.g., no friends, conflicts with peers or co-workers)." *Id*.

241). She denied a history of manic episodes or psychotic symptoms, and denied any current suicidal thoughts (AR 241). Plaintiff reported that she took Prozac as prescribed by her primary care physician (AR 241).

On mental status examination, Dr. Su reported that Plaintiff was fully oriented, her speech was coherent and goal directed, and her long term and short term memory were intact (AR 242). Her mood was depressed, and her affect was superficially bright, but at times was dysphoric and labile (AR 242). Dr. Su found no clear evidence of markedly bizarre or delusional thinking (AR 242). He further found her to be of average intelligence, with "fair" insight and judgment (AR 242). Dr. Su diagnosed Plaintiff with major depressive disorder, recurrent episode, severe, and rule out dysthymic disorder and post-traumatic stress disorder, and assigned her a GAF score of 55 to 60 (AR 242). She was continued on Prozac and Dr. Su added Wellbutrin to her medication regimen (AR 242).

Plaintiff returned to Stairways on January 28, 2010 and reported that her house had burned down one week prior to Christmas and everything had been lost, including her dogs (AR 244). She reported to Dr. Su that she held her husband responsible for the fire and wanted to hurt him, but denied any plan or intent to do so (AR 244). She stated that her medications had been destroyed in the fire and her symptoms of depression had worsened (AR 244). On mental status examination, Dr. Su reported that Plaintiff had decreased motor activity, and she was depressed, anxious, angry and had feelings of helplessness (AR 244). Her affect was blunted and sad (AR 244). Dr. Su found her remaining mental status examination was within normal limits (AR 244). Her medications were restarted and her treatment goals remained the same (AR 243-244).

When see by Tariq Qureshi, M.D., on May 11, 2010, Plaintiff reported depression and trouble with motivation, but noted that her crying had decreased (AR 245). Plaintiff also reported sleeping 12 to 15 hours per night (AR 245). Dr. Qureshi's mental status examination of

6

the Plaintiff was within normal limits, and he reported that she was stable on her medication regimen (AR 245).

When seen by Ms. Grove on May 17, 2010, Plaintiff's treatment goals remained unchanged (AR 246). Ms. Grove reported that Plaintiff felt she needed a regular therapist and assistance in developing assertiveness skills (AR 246).

Plaintiff and her daughter-in-law, Michelle Marie Bickel, testified at the hearing held by the ALJ on June 17, 2010 (AR 22-46). Plaintiff testified that she lived with her husband and disabled son (AR 28-29). Plaintiff indicated that their home was destroyed by a fire in December 2009 (AR 27-28). Plaintiff testified that she constantly had thoughts of childhood abuse, and claimed that she spent 15 to 20 hours per day in bed in order to shut everything out of her mind (AR 39). Plaintiff denied socializing, attending church or engaging in any hobbies (AR 40-42). Her current medications included Prozac and Wellbutrin (AR 33). Plaintiff's daughter-in-law testified that Plaintiff spent her time lying down (AR 43-44). She further testified that Plaintiff did not socialize, appeared depressed, and engaged in little activity (AR 44).

Following the hearing, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Act (AR 11-18). Her request for an appeal with the Appeals Council was denied, rendering the ALJ's decision the final decision of the Commissioner (AR 1-6). She subsequently filed this action.

### III. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). It has

been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. § 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25,

124 S.Ct. 376, 157 L.Ed.2d 333 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

The ALJ concluded that the Plaintiff's depression and post-traumatic stress disorder were severe impairments, but determined at step three that she did not meet a listing (AR 13-14). The ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but was limited to simple, routine, repetitive tasks involving no more than minimal contact with others (AR 15). At the final step, the ALJ concluded, after considering the Plaintiff's age, education, work experience and residual functional capacity, that there were jobs that existed in significant numbers in the national economy that she could perform (AR 18). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff argues that the ALJ committed "clear error" by improperly relying on the Medical-Vocational Guidelines (the "Grids") and Social Security Ruling ("*SSR*") 85-15 in deciding her case without utilizing a vocational expert. *See* [ECF No. 9] pp. 7-12. The Grids were promulgated in order to establish the types and numbers of jobs that exist in the national economy for claimants with exertional impairments. *See* 20 C.F.R. § 416.969. They consist of a matrix of four factors including physical ability, age, education, and work experience, and provide guidance as to whether a particular combination of all four factors direct a decision of "disabled" or "not disabled." *Sykes*, 228 F.3d at 263; *Santise v. Schweiker*, 676 F.2d 925, 928 (3d Cir. 1982). "Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion that work exists that the claimant can perform." *Sykes*, 229 F.3d at 263. Where a claimant suffers only non-exertional limitations however, the ALJ cannot rely solely on the Grids, and is required to determine if the non-exertional

9

impairments significantly erode the claimant's occupational base. *Sykes*, 229 F.3d at 269. In determining the effect of the non-exertional limitations on the claimant's ability to work, an ALJ is permitted to rely on a Social Security Ruling by the Agency. *Allen v. Barnhart*, 417 F.3d 396, 406 (3d Cir. 2005). "[I]f the [ALJ] wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Id*. at 407; *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 94 (3d Cir. 2007).

In *Allen*, the ALJ found that the claimant had the RFC for simple routine repetitive work at all exertional levels. *Allen*, 417 F.3d at 400. The ALJ then concluded that "a finding of not disabled was reached by application of medical-vocational rule 204, Appendix 2, subpart P, Regulations Part 404, used as a framework for decision making. The mental limitations for simple, routine, repetitive work do not significantly erode the base of jobs that claimant is capable of performing. (SSR 85-15)." *Id*. The Third Circuit concluded that this finding was not supported by substantial evidence:

> [T]he ALJ's reliance on SSR 85–15 in this instance, and in summary fashion, gives us pause. While the Agency excerpted a certain portion of SSR 85–15 as conclusive on the relationship between the type and degree of mental limitation and the size of the occupational base, nonetheless, the ALJ's conclusion in this regard fails to focus on any of Allen's work-related limitations. Instead, the ALJ's opinion parrots the attributes of work, not the limitations experienced by Allen, noting that Allen was capable of performing "a full range of unskilled work at all exertional levels" but then stating, as the complete mental impairment analysis, the following: "The mental limitations for simple, routine, repetitive work do not significantly erode the base of jobs the claimant is capable of performing. (SSR 85–15.)"

> The difficulty we have with this reasoning is that the Appeals Council in its remand order specifically admonished the ALJ to state the claimant's exertional and nonexertional limitations. Instead, the ALJ refers to SSR 85–15 as though it resolves the issue. However, SSR 85–15 is a ten-page ruling that specifically addresses the relationship of different mental impairments to job activity. … The

10

> SSR also includes a discussion of the impact of the inability to handle stress, and addresses how an individual with a difficult reaction to the demands of work may have difficulty meeting the requirements of even low-stress jobs. Further, it notes that the reaction to stress is highly individualized. The section ends with the notation that any impairment-related limitations created by an individual's response to demands of the workplace must be reflected in the RFC assessment. *Id*. at *5-6.
>
> Notwithstanding the ALJ's reference to, and apparent reliance on, this Ruling, we are at a loss to find within the Ruling itself the conclusion the ALJ seems to find regarding the occupational base for one with Allen's mental limitations.
>
> The ALJ makes broad statements regarding Allen's RFC, as we referenced above, but his conclusion only addresses in general fashion the "mental limitations for simple, routine, repetitive work." It does not reference any aspect of SSR 85–15 that relates Allen's particular nonexertional limitations to the occupational job base. Thus, we have difficulty in determining what the ALJ believed were Allen's "mental limitations for simple, routine, repetitive work," and how they fit into the various categories or examples set forth in SSR 85–15.
> …
> Looking at the ALJ's conclusory reference to SSR 85–15, we cannot determine whether he was relying upon a specific aspect of the Rule in a permissible way, or whether, by contrast, he found certain limitations to exist which would require, under the dictates of the Rule itself, an individualized determination. Looking at the record before us, we cannot help but note that certain aspects of Allen's mental disorder—including response to supervision, stress, and the like—would more likely be subjected to an individualized assessment.

*Allen*, 417 F.3d at 404-07.

Plaintiff argues that a remand is dictated in this case because, similar to *Allen*, the ALJ failed to mention any portion of *SSR* 85-15 that pertained to her specific mental limitations, and failed to assess her ability to tolerate stress and changes. *See* [ECF No. 9] p. 10. The Court agrees. The ALJ recited the following at the last step of his analysis:

> …When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless

11

> there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertinal limtations (SSR's 83-12 and 83-14). If the claimant has solely nonexertional limitaitons, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).
>
> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

(AR 18). Here, as in *Allen*, the ALJ did not cite to any of the examples in *SSR* 85-15, and failed to explain how the Plaintiff's specific non-exertional impairments would impact her ability to perform unskilled work. The ALJ also failed to identify how the Ruling "fit between the facts of [the particular] case, namely, [Plaintiff's] specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the case." *Allen*, 417 F.3d at 406; *see also Meyler v. Comm'r of Soc. Sec.*, 238 Fed. Appx. 884, 890 (3d Cir. 2007) ("The ALJ did not explain why, under SSR 85-15 … Meyler's nonexertional impairments did not prevent her from meeting the mental demands of unskilled work."); *Fahy v. Astrue*, 2008 WL 2550594 at *6 (E.D.Pa. 2008) ("Because the ALJ has failed to make "crystal clear" that the SSR is probative as mandated by the Third Circuit, and because the Court cannot determine, based on the current record, whether the ALJ's reliance on the SSR as a substitute for the individualized assessment of a vocational expert was proper, remand to the Commissioner is appropriate."). Given the deficiencies discussed above, the case shall be remanded to the Commissioner to more fully articulate how "SSR 85-15 is relevant and controlling-if indeed that is the case-or by obtaining the individualized assessment that SSR 85-15 seems to prefer by way of vocational expert." *Allen*, 417 F.3d at 407.

Plaintiff also argues that the ALJ's evaluation of the Stairways treatment notes was selective and/or inadequate. *See* [ECF No. 9] pp. 12-17. In evaluating a claim for benefits, the

ALJ must consider all the evidence in the case. *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999). The Third Circuit has also directed that "[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence," *Dobrowolsky v. Califano*, 606 F.2 403, 407 (3d Cir. 1979), and "adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000). Without this type of explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705-07 (3d Cir. 1981); *see also Plummer*, 186 F.3d at 429 (ALJ must give some reason for discounting the evidence he rejects).

In concluding that the Plaintiff had the mental residual functional capacity ("RFC")[4] to perform simple, routine, repetitive tasks involving no more than minimal contact with others, the ALJ stated the following with respect to the Stairways records:

> … Even at intake, when the claimant alleged extreme inactivity and dependence on others, the evaluation produced a global assessment of functioning (GAF) of 55 to 60 indicating no more than moderate loss of function (Ex. 11-F/3,6).
>
> … When she began regular mental health treatment, the claimant acknowledged that depressive symptoms had been with her since childhood and had worsened over the previous year and acknowledged that she felt confined to home to supervise her adult son and her husband. However, she had formerly gone to casinos and enjoyed playing bingo with a friend. With treatment, her mood improved quickly. She reported that she was not working outside her home but was working on the family farm.
>
> The undersigned acknowledges that the claimant suffered a temporary understandable setback when her home and medications were destroyed by fire one week before Christmas. Her treatment resumed in late January and by May 2010, she was assessed as stable on medication, and all mental status factors were

---

[4] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft*, 181 F.3d at 359 n.1); *see also* 20 C.F.R. § 416.945(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2).

13

within normal limits, and the claimant reported that her motivation was still low but she was crying less often. …

(AR 16-17).

Plaintiff was seen at Stairways on five occasions, from September 25, 2009 until May 17, 2010. Plaintiff highlights treatment note entries wherein she reported that she continued to suffer from depression with thoughts of death, claiming that these entries were "selectively" ignored by the ALJ. However, an ALJ is not required to discuss every piece of medical evidence in the record, *see Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001), and in any event, to the extent the Plaintiff contends that these records support an inability to work, we disagree. While the Plaintiff reported symptoms of depression and thoughts of death, her mental health care providers consistently found that she suffered from only moderate symptoms. For example, in October 2009, Dr. Su reported that Plaintiff had a depressed mood, but her remaining mental status examination was essentially unremarkable (AR 242). Dr. Su found no evidence of markedly bizarre or delusional thinking, and assessed her with a GAF score of 55-60 (AR 242). In January 2010, Dr. Su reported that Plaintiff was depressed, anxious, and angry after a fire had destroyed her home and dogs (AR 244). Her remaining mental status examination however, was "within normal limits", and her medications were restarted (AR 244). By May 2010, Plaintiff continued to report depression, but Dr. Qureshi found that her mental status examination was "within normal limits" and she was "stable" on medication (AR 245). Moreover, none of the Stairways records contain a functional capacity assessment from her treating psychiatrist, or contain any findings that the Plaintiff was functionally limited or precluded from working. Accordingly, we find that the ALJ adequately reviewed and discussed these records in compliance with his responsibilities under *Cotter* and its progeny.

Plaintiff similarly challenges the manner in which the ALJ utilized Dr. Mercatoris' report. Dr. Mercatoris was a consulting examiner, who found that the Plaintiff had only slight limitations in understanding, remembering, and carrying out short, simple instructions (AR 180).

14

He further found that she had only moderate limitations in understanding, remembering and carrying out detailed instructions, and making judgments on simple work-related decisions (AR 180). Finally, Dr. Mercatoris concluded that Plaintiff would have only moderate limitations in interacting appropriately with the public, supervisors and co-workers, and in responding appropriately to work pressures and changes in a usual work setting (AR 180).

In affording Dr. Mercatoris' assessment "great weight", the ALJ observed that Dr. Mercatoris found that the Plaintiff was able to communicate clearly, her memory was intact, she was able to manage her own funds, and she had no marked or extreme limitations on her ability to perform the mental functions of work (AR 15). Plaintiff argues that the ALJ failed to adequately address all pertinent medical findings in Dr. Mercatoris' narrative report in evaluating his opinion. *See* [ECF No. 9] pp. 17-20. The ALJ specifically rejected the Plaintiff's contention that the narrative portion of Dr. Mercatoris' assessment suggested that the Plaintiff was "more limited than indicated by his moderate responses on the function-by-function questionnaire." (AR 16). The ALJ observed that Dr. Mercatoris was not specific when he noted that the Plaintiff may have difficulties with functioning, and that the evidence failed to support any additional limitations (AR 16). The ALJ further observed that one month after her consultative examination with Dr. Mercatoris, her intake evaluation at Stairways revealed that she experienced only moderate symptoms (AR 16).[5] The ALJ evaluated Dr. Mercatoris' opinion consistent with *Cotter* and his findings are supported by substantial evidence.

We also reject the Plaintiff's contention that the ALJ erred in failing to develop the record by recontacting Dr. Mercatoris due to an alleged "ambiguity" in his report. *See* [ECF No. 9] pp. 19-20. The regulations provide that an ALJ must recontact a medical source "when the report from [Plaintiff's] medical source contains a conflict or ambiguity that must be resolved,

---

[5] Plaintiff argues that the ALJ improperly considered the Plaintiff's moderate GAF score in his evaluation of Dr. Mercatoris' opinion. This case does not, however, present the situation where the ALJ "cherry picked" GAF scores to support his assessment, nor did he ignore GAF scores altogether. We therefore find nothing improper with the ALJ's consideration of this evidence.

15

the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (quoting 20 C.F.R. § 416.912(e)(1)).[6] Recontact is only required however, when "the evidence we received from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." *Id*. We find no conflicts or ambiguities in the medical records that would have required the ALJ to seek further clarification from Dr. Mercatoris. As previously discussed, the ALJ addressed the Plaintiff's contention that Dr. Mercatoris' narrative report was inconsistent with his RFC assessment, but concluded that the medical evidence failed to support any additional limitations (AR 16). We therefore conclude that there was sufficient evidence to support the ALJ's decision without further development of the record.

Plaintiff further challenges the ALJ's reliance on the opinion of Dr. Rattan, the state agency reviewing psychologist, who concluded that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis (AR 205). Plaintiff argues that the ALJ failed to weigh this non-examining opinion by "stricter standards." [ECF No. 9] pp. 20-21. According to the Commissioner's regulations, the opinions of state agency reviewing physicians and psychologists are weighed by stricter standards than treating sources' opinions. 20 C.F.R. § 416.927(f); *SSR* 96-6p, 1996 WL 374180 at *2. In deciding the weight to be afforded such opinions, the ALJ considers the nature of the relationship, the supporting explanations provided for in the opinion, the consistency of the opinion with the records as a whole, the medical source's specialization, and any other relevant factors. 20 C.F.R. § 416.927(f).

The ALJ recognized the nature of the relationship and Dr. Rattan's specialty by noting that she was a "mental health reviewer" who examined the Plaintiff's claim at the initial

---

[6] The SSA eliminated this provision and § 404.1512(e)(1), effective March 26, 2012. *See generally* How We Collect and Consider Evidence of Disability, 77 Fed.Reg. 10,651 (Feb. 23, 2012). The new protocol for recontacting medical sources is set forth in 20 C.F.R. §§ 404.1520b, 416.920b. *See Gray v. Astrue*, 2012 WL 1521259 at *3 n.1 (E.D.Pa. 2012).

16

determination (AR 17). The ALJ considered Dr. Rattan's assessment in light of the record as a whole, and concluded that it was "supported by the evidence" and the Plaintiff's response to mental health treatment (AR 17). To the extent the Plaintiff argues that Dr. Rattan's opinion should have been accorded diminished weight since it was rendered without a review of the Stairways records, we disagree. The Third Circuit has specifically rejected this argument, noting: "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012). Finally, we are not presented with the situation where a non-examining physician's opinion was credited over the opinion of a treating physician without an adequate explanation. In this case, no treating physician, or examining physician for that matter, rendered an assessment that conflicted with the assessment of Dr. Rattan. In sum, we find that the ALJ complied with his obligations under the regulations.

Plaintiff's final argument is that the ALJ erred in assessing her credibility. An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 29 C.F.R. § 416.929(a); *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999). In assessing subjective complaints, *SSR* 96-7p and the regulations provide that the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. 20 C.F.R. § 416.929(c); *SSR* 96-7p, 1996 WL 374186 at *2. As the finder of fact, the ALJ can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination

17

is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

The ALJ concluded that the Plaintiff's statements concerning her claimed limitations were not entirely credible (AR 16-17). The ALJ found it significant that the Plaintiff was able to care for her disabled adult child in her home, as well as help care for her husband, who also required assistance (AR 14). The ALJ further noted that while the Plaintiff generally had little contact with others beyond her family, she was cooperative at her consultative examinations and liked to gamble or play bingo when she had the money to do so (AR 14). Plaintiff was able to keep appointments and had no difficulty remembering to take her insulin (AR 14). In addition to these findings, the ALJ also examined and relied on the medical evidence, and the fact that the Plaintiff's mood improved with mental health treatment, in concluding that the Plaintiff was more functional than she claimed (AR 16-17). All of these findings are supported by substantial evidence and we find no error in the ALJ's credibility determination.

## V. CONCLUSION

For the reasons discussed above, both Motions will be denied and the matter will be remanded to the Commissioner for further proceedings.[7] An appropriate Order follows.

---

[7] The ALJ is directed to reopen the record and allow the parties to be heard via submissions or otherwise as to the issue addressed in this Memorandum Opinion. *See Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 800-01 (3d Cir. 2010).

18

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAULA L. BICKEL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 12-98 Erie |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

AND NOW, this 1st day of August, 2013, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF No. 8] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 10] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is directed to mark the case closed.

                                                                                                     s/ Sean J. McLaughlin
                                                                                                      Chief United States District Judge

cm:     All parties of record